## COOK v. LESLIE et al.

No. 9035.

Court of Civil Appeals of Texas. San Antonio.

March 29, 1933.

Rehearing Denied April 26, 1933.

Griffin, Kimbrough & Cox, of McAllen, for appellant.

Carl & Leslie, of Edinburg, and E. A. McDaniel, of McAllen, for appellees.

FLY, Chief Justice.

This is an action by appellant for the balance on a promissory note of $2,390.38, and the foreclosure of a lien for the purchase money on certain land situated in Hidalgo county. The suit was against a number of defendants, but the note was executed by J. E. Leslie and George H. Kunz. The cause was heard by the court without a jury and judgment rendered for the balance due on the note and a foreclosure on all the land except that theretofore sold by the parties in possession.

Parts of the judgment reciting the facts pertinent to this appeal are herein copied, as follows:

"On the 29th day of May, A. D. 1926, by general warranty deed of that date, plaintiff conveyed to defendants, J. E. Leslie and George H. Kunz, the said George H. Kunz being now deceased * * * a certain tract or parcel of land, lying and being situated in Hidalgo County, Texas. * * *

"As a part of the purchase money for said above described premises, the said J. E. Leslie and George H. Kunz, now deceased, did execute and deliver to plaintiff, their certain promissory vendor's lien note in the principal sum of Five Thousand ($5,000.00) Dollars, bearing interest at the rate of 6% per annum, interest payable annually, and providing 10% attorneys fees on any amount then due and owing on principal or interest in the event said note should become in default and not paid at its maturity; said note maturing on or before two years after date; and in said deed the vendor's lien was especially retained to secure the payment of said note.

"Said deed from said plaintiff to the defendants J. E. Leslie and George H. Kunz, now deceased, contained a provision among other things, that in the event the said J. E. Leslie and George H. Kunz should subdivide said above described premises into lots and blocks, should they tender to the said plaintiff Fifty Dollars for any lot sold, after same had been subdivided, that he, plaintiff, would release such lot or lots thus sold from the vendor's lien in said deed retained.

"On November 8, 1926, the said defendant J. E. Leslie sold and conveyed his undivided interest in and to said above described real estate to the defendant P. W. Barron, and as a part of the purchase consideration from the said P. W. Barron to the defendant J. E. Leslie, the said P. W. Barron did assume to pay off and discharge said above described note in the sum of $5,000.00, together with interest and attorneys fees thereon, and to hold the said J. E. Leslie safe and harmless from any liability thereon.

"Thereafter, on November 27, 1928, the said George H. Kunz, now deceased, sold and conveyed his interest in and to the aforesaid described premises, and as a part of the purchase consideration moving to the said George H. Kunz by the said P. W. Barron,

the said P. W. Barron assumed any and all balances due and owing on said $5,000.00 note, executed by said defendants J. E. Leslie and George H. Kunz to the plaintiff herein when they acquired said land.

"After said land * * * was sold by plaintiff to the defendants J. E. Leslie and George H. Kunz, the same was platted and subdivided into lots and blocks, and as subdivided was called the La Paloma Addition to the city of McAllen, Texas. * * *

"After the said P. W. Barron, defendant herein, had acquired title to the aforesaid described premises, he sold to the defendants and intervenors in this suit, save and except the defendants, J. E. Leslie, P. W. Barron, Marion Kunz and J. B. Close, who have remained herein throughout the trial," certain described portions thereof.

The facts thus stated are not contested and show the status of the case. Under the agreement certain lots were sold and certain sums were paid to the owner of the note, thereby causing a release of such lots from the vendor's lien and any liability for purchase money to appellant.

The contention upon which this appeal is based is that lots which were sold by Leslie and his grantee, and the money paid to appellant without designation of the lots upon which the money was paid and without obtaining releases thereon at the time, should not be released from the general lien on the whole tract. It is not contended that the list of the purchasers of lots in the subdivided tract were not properly detailed in the judgment, nor that the amounts given as having been paid to appellant were not correct, but that because the number of the lot and the name of the purchaser were not given at the time the proper sum was paid to appellant, that the latter still held a lien on the lots and it was error to refuse to foreclose the vendor's lien on such lots. Each purchaser of a lot in the subdivision had constructive notice from the deed given by appellant to Leslie and Kunz, which stated that all lots sold by the vendees should be released upon payment of certain sums, from the vendor's lien. A demand, it is true, seems contemplated, but that is not mandatory or essential to lift the lien from the lot sold to a buyer, under the agreement, when the $50 was paid. The payment of the money to appellant released the lot purchased by a third party, who had been led by the agreement set out in the deed to purchase the lot. Execution of the release was not essentially necessary to lift the lien, but the essential matter was payment of the $50 a lot. It is not the contention of appellant that any of the lots that were sold were not fully paid for under the terms of the deed, but that the purchasers of lots should be made to suffer because re-

leases had not been formally demanded and formally executed. It would be inequitable and unjust to permit any creditor to take advantage of such bare technicalities to the great damage of purchasers of the lots. The releases were paid for, and, whether demanded or not, equity will consider that was done which conscientious and just dealing demand should have been done. The releases should have been given; equity will regard them as having been given. It was the intent to give such releases, and that intent should control any formal act to be done. Equity has incarnated the Golden Rule so as to compel unwilling men to act toward others as they would ask that others act toward them. It has erected a court of conscience and higher justice, and rendered the iron-bound rules of law kind, human, and considerate of the rights of others. The maxims of equity find a place for expression under the facts in this case. The courts of Texas uniformly enforce those maxims. Tex. Jur. vol. 17, §§ 35, 36, 37.

The judgment is affirmed.